UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JAMES A. SANDALER,**

**Plaintiff,**

**v.**                                                   **Case No:  6:16-cv-1919-Orl-41GJK**

**WELLS FARGO BANK, N.A.,**

**Defendant.**

_____/

### ORDER

THIS CAUSE is before the Court on Defendant's Motion to Dismiss ("Motion," Doc. 50), to which Plaintiff filed a Response (Doc. 55). For the reasons stated below, Defendant's Motion will be granted in part and denied in part.

### I.     BACKGROUND

On January 23, 2006, Plaintiff obtained a loan, which was secured by a mortgage on Plaintiff's home. (Second Am. Compl., Doc. 41, ¶ 11). Plaintiff's loan was eventually bundled with other loans and deposited into a trust, and U.S. Bank, National Association ("U.S. Bank") held legal title to the bundled loans. (*Id.* ¶ 13). Wells Fargo was the subservicer for Plaintiff's loan. (*Id.* ¶ 12). In 2011, Plaintiff defaulted on his loan payments, (*see id.* ¶¶ 17, 19), and on January 13, 2012, U.S. Bank filed a foreclosure action against Plaintiff in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County. (*Id.* ¶ 21). While the foreclosure action was pending, on April 17, 2013, Plaintiff filed for Chapter 7 Bankruptcy and obtained a discharge on August 1, 2013. (*Id.* ¶ 29 & n.13).

On February 24, 2015, Plaintiff, proceeding *pro se*, initiated the instant action against Defendant and Ocwen Loan Servicing, LLC ("Ocwen") by filing a Complaint in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, alleging wrongful foreclosure, unjust

enrichment, and breach of contract claims, arising out of Defendant's alleged failure to convert a complete trial loan modification agreement to a permanent loan modification agreement. (*Id.* ¶ 54; Compl., Doc. 1-3, at 3–5). Prior to filing his Complaint—between September 7, 2011, and February 14, 2014—Plaintiff submitted five different loan modification applications to Defendant. (Doc. 41 ¶¶ 18, 20, 24–25, 45). Plaintiff submitted his sixth and final loan modification application on September 14, 2015. (*Id.* ¶ 57). However, none of Plaintiff's applications resulted in a modification to Plaintiff's loan. (*See id.* ¶¶ 18, 20, 30–41, 45, 58).

On June 1, 2015, U.S. Bank filed an Amended Complaint in the foreclosure action, (Am. Verified Compl., Doc. 41-2, at 67–71; Brevard County Clerk of Courts Docket, Doc. 50-1, at 6), to which Plaintiff filed an Answer (Doc. 50-1 at 6). On or about April 18, 2016, a final judgment of foreclosure was entered in favor of U.S. Bank in the state foreclosure action. (Doc. 41 ¶ 59; Final J. of Foreclosure, Doc. 41-3, at 71–74). U.S. Bank was also the prevailing bidder at the August 17, 2016 foreclosure sale and obtained a certificate of title to Plaintiff's property on September 6, 2016. (*Id.* ¶ 60; Doc. 50-1, at 9). Plaintiff did not object to the foreclosure sale or appeal the state foreclosure judgment.

On September 27, 2016, Plaintiff—now represented by counsel—filed an Amended Complaint in the instant action, bringing federal and state-law claims related to the servicing of his mortgage. (*See generally* Am. Compl., Doc. 3). Defendant subsequently filed a Notice of Removal (Doc. 1) pursuant to 28 U.S.C. § 1331 and then moved to dismiss the Amended Complaint, (*see* Mot. to Dismiss, Doc. 24). While the motion to dismiss was pending, the parties filed a Joint Stipulation of Dismissal with Prejudice as to Ocwen (Doc. 24), and Ocwen was terminated as a party, (Jan. 23, 2017 Order, Doc. 37, at 1). In response to Defendant's motion to dismiss, Plaintiff sought and was granted leave to file the Second Amended Complaint. (Pl.'s Unopposed Mot. for Leave to File Second Amended Complaint, Doc. 39, at 1; Feb. 10, 2017 Order, Doc. 40). After Plaintiff filed the Second Amended Complaint ("SAC"), Defendant filed the

Motion to Dismiss currently before the Court, asking the Court to dismiss all five counts asserted in the SAC.

While the Motion was pending, the parties filed a Joint Stipulation for Dismissal of Counts 2, 3, and 4 ("Joint Stipulation," Doc. 69). The parties do not cite any authority authorizing the dismissal of these claims. The Court presumes the parties were attempting to dismiss the claims under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). That Rule, however, only permits parties to voluntarily dismiss "an action," rather than individual claims. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii). Nevertheless, the Court will construe the Joint Stipulation as a notice that Plaintiff does not oppose Defendant's Motion to the extent it requests dismissal of Counts II, III, and IV. Counts II, III, and IV will therefore be dismissed.

Counts I and V remain. Count I alleges violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and its implementing regulations, also known as "Regulation X," 12 C.F.R. § 1024.1 *et seq.*, in relation to Plaintiff's fifth and sixth loan modification applications.[1] Count V asserts a claim for negligent mortgage servicing based on Defendant's alleged violations of the National Mortgage Settlement as well as a consent judgment entered in another matter (the "Ocwen Consent Judgment" or "OCJ").

## II.    MOTION TO DISMISS LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th

---

[1] Though not entirely clear in the SAC, Plaintiff's Response indicates that "Count 1 only applies to the fifth and sixth loan modification applications." (Doc. 55 at 13).

Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.   ANALYSIS

Defendant argues that the SAC should be dismissed because the *Rooker-Feldman* doctrine bars this Court from having jurisdiction over Plaintiff's claims. Alternatively, Defendant argues that Plaintiff's claims are barred by Florida's compulsory counterclaim rule, that Plaintiff should be judicially estopped from brining his claims, and that Plaintiff has failed to state a claim. Defendant's arguments will be addressed in turn.

### A.   *Rooker-Feldman* Doctrine

"Attacks on subject matter jurisdiction under [Rule] 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). The present case involves a factual attack. In other words, Defendant "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Lawrence*, 919 F.2d at 1529 (quotation omitted). On a factual attack, courts may consider "matters outside the pleadings, such as testimony and affidavits," *id.* at 1529 (quotation omitted), weigh the evidence, and make findings of fact, as long as "the facts necessary to sustain jurisdiction do not implicate the merits of [the] plaintiff's cause of action," *Garcia*, 104 F.3d at 1261. In such a case, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed

material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence*, 919 F.2d at 1529 (quotation omitted).

Pursuant to the *Rooker-Feldman* doctrine, "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *see also Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923). In other words, district courts lack jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The doctrine applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (quoting *Feldman*, 460 U.S. at 482 n.16). "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (quotations omitted).

The *Rooker-Feldman* doctrine applies only to federal actions "filed after the state proceedings have ended." *Nicholson v. Shafe*, 558 F.3d 1266, 1275 (11th Cir. 2009). For the purposes of applying the *Rooker-Feldman* doctrine, state court proceedings have ended:

> (1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, (2) if the state action has reached a point where neither party seeks further action, and (3) if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated.

*Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1072 (11th Cir. 2013) (quoting *Nicholson*, 558 F.3d at 1275).

It is undisputed that Plaintiff filed the instant action on February 24, 2015. (*See* Doc. 50 at 7 (noting that Plaintiff filed his initial Complaint on February 24, 2015); Doc. 55 at 8 (noting that commencement of this federal action related back to February 24, 2015)). Defendant argues that the third test applies in this case, and thus, for purposes of the *Rooker-Feldman* doctrine, the state

foreclosure proceeding had ended when Plaintiff filed the instant action. More specifically, Defendant asserts that when Plaintiff initiated this action, the only issues remaining to be litigated in the foreclosure action pertained to the mortgage foreclosure under state law.

The Court disagrees that the third test applies here. The foreclosure action solely involved state law. Thus, the state court could not have "finally resolved all the federal questions in the litigation"; there were never any federal questions for the state court to litigate. However, even if the third test did apply here, there is a procedural issue that prevents the application of *Rooker-Feldman*.

The Supreme Court has cautioned courts on the narrow application of *Rooker-Feldman*. "In *Exxon Mobil*, the Court reminded lower courts that *Rooker-Feldman* only applies to cases brought by those 'complaining of injuries caused by state-court judgments rendered *before* the district court proceedings commenced . . . ." *Velazquez v. S. Fla. Fed. Credit Union*, 546 F. App'x 854, 858 (11th Cir. 2013) (emphasis added) (quoting *Exxon Mobil*, 544 U.S. at 284). While the instant action was initiated on February 24, 2015, the state court did not enter a final judgment in the foreclosure action until April 22, 2016. Moreover, the fact that SAC was not filed until February 10, 2017, after the state court judgment was rendered, is of no import. Under the Federal Rules of Civil Procedure, Plaintiff's SAC relates back to the date of his original pleading. *See* Fed. R. Civ. P. 15(c)(1)(B). Accordingly, the state court judgment had not been rendered when this action commenced. It therefore follows that when Plaintiff filed this action, he was not a state-court loser complaining of injuries caused by a state-court judgment. Thus, *Rooker-Feldman* cannot apply here. *See Exxon Mobil*, 544 U.S. at 293–94 (holding that *Rooker-Feldman* did not apply where the party initiating the subsequent federal action had "not repaired to federal court to undo the [state court] judgment in its favor"); *Novick v. Wells Fargo Bank, N.A.*, No. 16-cv-22982-GAYLES, 2017 WL 2464707, at *2 (S.D. Fla. June 7, 2017) ("The doctrine does not apply in this instance as Plaintiff filed his federal action before there was a final judgment in the Foreclosure

Action." (citing *Green v. Jefferson Cty. Comm'n*, 563 F.3d 1243, 1249–50 (11th Cir. 2009))); *cf.*

*Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1321 (S.D. Fla. 2011) ("Procedurally, *Rooker–*

*Feldman* may apply here as this federal case was not filed until after the state-court proceedings

concluded."), *aff'd*, 477 F. App'x 558 (11th Cir. 2012). To the extent Defendant's Motion requests

that this case be dismissed for lack of subject matter jurisdiction under *Rooker-Feldman*,

Defendant's Motion will be denied.

### B.    Compulsory Counterclaims

Defendant argues that Plaintiff's claims are due to be dismissed because they are

compulsory counterclaims that Plaintiff was required to assert in the state foreclosure action.

Plaintiff responds that his claims were not compulsory because they had not yet accrued when

Plaintiff filed his Answer in the state foreclosure action.

"[T]he failure to bring a compulsory counterclaim in a state court proceeding bars a

subsequent suit in federal court on that claim." *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs.*,

57 F. Supp. 3d 1358, 1370 (M.D. Fla. 2014), *aff'd*, 626 F. App'x 935 (11th Cir. 2015). "The Court

looks to state law to determine whether a particular claim is a compulsory counterclaim." *Novick*,

2017 WL 2464707, at *2. Florida Rule of Civil Procedure 1.170 incorporates Rule 13(a) of the

Federal Rules of Civil Procedure, *Beepot*, 57 F. Supp. 3d at 1369, and provides:

> A pleading must state as a counterclaim any claim which at the time of serving the
> pleading the pleader has against any opposing party, provided it arises out of the
> transaction or occurrence that is the subject matter of the opposing party's claim
> and does not require for its adjudication the presence of third parties over whom
> the court cannot acquire jurisdiction.

Fla. R. Civ. P. 1.170(a). "Pursuant to this Florida Rule, 'a compulsory counterclaim is a

defendant's cause of action arising out of the transaction or occurrence that formed the subject

matter of the plaintiff's claim.'" *Beepot*, 57 F. Supp. 3d at 1370 (quoting *Montgomery Ward Dev.*

*Corp. v. Juster*, 932 F.2d 1378, 1380–82 (11th Cir.1991)).

"[The] logical relationship test is the yardstick for measuring whether a claim is compulsory" under Florida law. *Id.* (citing *Londono v. Turkey Creek, Inc.*, 609 So. 2d 14, 20 (Fla. 1992)). The logical relationship test that is applied by Florida courts is the same as the test applied in the Eleventh Circuit. *Id.* According to that test:

> A claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.

*Juster*, 932 F.2d at 1381 (quoting *Neil v. S. Fla. Auto Painters, Inc.*, 397 So. 2d 1160, 1164 (Fla. 3d DCA 1981)); *see also Londono*, 609 So. 2d at 20. "The aggregate operative facts that can act as a common basis for both claims have been broadly construed in Florida." *Juster*, 932 F.2d at 1381.

Defendant argues that Plaintiff's claims arise out of the same transaction or occurrence that was the subject matter of the foreclosure action because his claims "involve parties, property, facts and circumstances, and security instruments identical to those involved in the Foreclosure Action." (Doc. 50 at 11). Defendant's assertion fails to establish that the claims involved in the foreclosure action and the claims alleged in this action arise from the same transaction or occurrence. Although both claims, in a technical sense, arise from Plaintiff's default on his mortgage payments, Plaintiff's claims in this action involve separate questions of law and fact from those at issue in the foreclosure action. *Cf. Plant v. Blazer Fin. Servs.*, 598 F.2d 1357, 1361 (5th Cir. 1979) (concluding that a counterclaim on a debt evidenced by a note which was the subject of a truth-in-lending action was compulsory where both the truth-in-lending claim and the claim for the unpaid debt were based on a note previously executed by the plaintiff—more specifically, where the truth-in-lending claim concerned the defendant's alleged failure to make the requisite disclosures with regard to the note, and the claim for the debt concerned the plaintiff's failure to make payments on

the same note);[2] *Miller v. Weitzer Panache Ltd.*, 751 F. Supp. 980, 984 (S.D. Fla. 1990) (citing *Spartan Grain & Mill Co. v. Ayers*, 581 F. 2d 419, 430 (5th Cir. 1978) (concluding that the plaintiff's claim for RESPA violations was not a compulsory counterclaim to the prior state action brought by the defendants against the plaintiffs for overpayment of fees at closing because the two issues involved distinct questions of law and fact).

While Plaintiff alleges that he would not have lost the property that was foreclosed upon and sold in the foreclosure sale had Defendant complied with RESPA, Regulation X, the National Mortgage Settlement, and the Ocwen Consent Judgment, this alone does not render Plaintiff's claims compulsory. *See Bowen v. Wells Fargo Bank, N.A.*, No. 2:11-cv-91-FtM-29SPC, 2011 WL 3627320, at *4 (M.D. Fla. Aug. 17, 2011) (finding that the plaintiff's federal and common law claims were not compulsory to the mortgage foreclosure claim previously brought against the plaintiff and noting that "while the issues in th[e] federal case stem[med] from the foreclosure, in that [the p]laintiff assert[ed] that [the defendant's] actions and misrepresentations led to the foreclosure," the claims were separate because they arose "from [an] alleged oral agreement and not from the foreclosure proceeding itself"). Notably, Plaintiff does not challenge the validity of the foreclosure judgment here. (Doc. 55 at 11–12). And while the foreclosure action was based on the mortgage and note Plaintiff executed, the instant action is based on Plaintiff's loan modification applications, related documents, and his communications and correspondence—or lack thereof—with Defendant. *See Aguilar v. Se. Bank, N.A.*, 728 So. 2d 744, 746 (Fla. 1999) (finding that a foreclosure suit was based on a mortgage and security agreement while a wrongful interference with a business relationship suit was based on a loan extension agreement and therefore the suits

---

[2] Unlike *Plant v. Blazer*, Plaintiff's claims in this case concern Defendant's alleged unlawful conduct in relation to Plaintiff's loan modification applications—i.e., a series of events which occurred after Plaintiff defaulted on his home loan and which involved actions and documents separate from those relating to Plaintiff's loan origination—while Defendant's foreclosure claim concerned Plaintiff's failure to make payments on his home loan.

involved distinct legal issues and facts so that the wrongful interference claim was not compulsory to the foreclosure claim).

Furthermore, the facts necessary to prove that Defendant violated RESPA, Regulation X, the National Mortgage Settlement, and the Ocwen Consent Judgment in handling Plaintiff's loan modification applications are different than the facts that were necessarily before the state court and that resulted in a judgment of foreclosure against Plaintiff. Count I arises from Defendant's purported failure to comply with federal regulations in handling Plaintiff's loan modification applications. Therefore, Count I raises issues such as whether Defendant evaluated Plaintiff's loan modification applications in a timely manner; whether Defendant provided Plaintiff with a timely and compliant notice that advised Plaintiff whether his application was complete or incomplete; whether any loss mitigation options were available to Plaintiff and, if so, which ones; and whether Defendant notified Plaintiff of his right to reject or accept any offer as well as his right to appeal Defendant's decision. Count V arises from Defendant's alleged violations of the National Mortgage Settlement and the Ocwen Consent Judgment. The issues raised in Count V include, for example, whether Defendant sent timely decision letters to Plaintiff in response to his loan modification applications and whether Defendant sent decision letters that advised Plaintiff of his appeal rights, stated the basis for the denial of Plaintiff's application, and itemized its requests for additional documentation. The foreclosure claim brought against Plaintiff, on the other hand, involved Plaintiff's default under the note and mortgage previously executed by Plaintiff. Thus, whether Defendant followed the procedures required under RESPA, Regulation X, the National Mortgage Settlement, and the Ocwen Consent Judgment in relation to Plaintiff's loan modification applications involves different legal and factual issues than the foreclosure action brought against Plaintiff. *See Marais v. JPMorgan Chase Bank, N.A.*, 676 F. App'x 509, 514 (6th Cir. 2017) (analyzing a similar RESPA claim pursuant to Federal Rule of Civil Procedure 13(a) and holding that there was no logical relationship between a foreclosure claim and the plaintiff's claim); *cf.*

*Novick*, 2017 WL 2464707, at *3 (holding that the plaintiff's claims, which concerned the defendant's alleged failure to modify the plaintiff's loan and which the plaintiff brought after a final judgment of foreclosure was entered against him in state court, were compulsory counterclaims where the plaintiff contested the validity of the prior foreclosure judgment and "[t]he facts necessary to prove [the p]laintiff's allegations that [the defendant] did not modify his loan and/or violated various statues in foreclosing on his home [were] the same facts that the state court had before it during the foreclosure proceedings"); *Martinez v. Bank of Am. Corp.*, No. 14-21467-CIV, 2014 WL 2735668, at *3 (S.D. Fla. June 16, 2014) (concluding that the plaintiff's claims—which asserted that the subject loan was not funded, that the defendants breached the terms of the note and mortgage, and that the plaintiff was misled into making payments on the note to the wrong entity—were intertwined with the validity of the note and mortgage and therefore were compulsory counterclaims that were required to be asserted in the prior state foreclosure action); *Wallace v. Mortg. Elec. Registration Sys., Inc.*, No. 8:10-cv-2509-T-23AEP, 2011 WL 1298195, at *2 (M.D. Fla. Apr. 1, 2011) (holding that the plaintiff's claims, which sought, inter alia, recission of the mortgage and generally alleged that the defendants failed to provide material disclosures with regards to the loan, and the prior state foreclosure action all arose from the same transaction—the mortgage loan transaction—and therefore qualified as compulsory counterclaims that should have been asserted in the foreclosure).

Moreover, "[a] counterclaim is not compulsory if it does not exist at the time the answer is served." *Inter-Active Servs. v. Heathrow Master Ass'n*, 809 So. 2d 900, 904 (Fla. 5th DCA 2002) (quotation omitted). The claims Plaintiff asserts in this action did not exist when Plaintiff filed his Answer to the original Complaint in the foreclosure action on February 8, 2012. (Doc. 50-1 at 1). As previously noted, Count I involves violations of RESPA and Regulation X with respect to Plaintiff's fifth and sixth loan modification applications. Plaintiff did not submit those applications until around February 24, 2014, and September 14, 2015, respectively. (Doc. 41 ¶¶ 45, 57). Under

Count V, the earliest allegation pertains to a decision letter sent to Plaintiff on September 20, 2012. (*See id.* ¶ 117). Thus, the timeline indicates that it was impossible for Plaintiff to assert his claims alleged in Counts I and V when he filed his original Answer to the foreclosure Complaint. Consequently, these claims cannot be deemed compulsory counterclaims. *See Aguilar*, 728 So. 2d at 746 (finding that the plaintiffs' claims were not compulsory to a foreclosure claim where, inter alia, the plaintiffs did not have the requisite information to assert a counterclaim at the time they filed their answers to the foreclosure complaint); *Inter-Active Servs.*, 809 So. 2d at 903 ("When other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action." (quoting *Hialeah Race Course, Inc. v. Gulf Stream Park Racing Ass'n*, 245 So. 2d 625, 628 (Fla. 1971))); *see also Bowen*, 2011 WL 3627320, at *3 (noting that claim preclusion "does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit" (quotation omitted)).

While it appears that several of Plaintiff's claims arose during the pendency of the foreclosure action, claims that mature or are acquired by the pleader after he serves his pleading are permissive, not compulsory. *Inter-Active Servs.*, 809 So. 2d at 904 (citing Fla. R. Civ. P. 1.170). And while Plaintiff arguably could have included the majority of his claims in his Answer to the Amended Complaint in the state foreclosure action—which Plaintiff submitted on July 6, 2015— at that time, Plaintiff had already initiated the instant action. Furthermore, Plaintiff was not required as a matter of law to include in his Answer to the Amended Complaint claims that had subsequently accrued. *See. id.* ("recognizing that it is not the function of an amendment to a pleading to cover subsequently accruing rights" (citing *Daytona Beach Racing & Recreational Facilities Dist. v. Volusia Cty.*, 355 So. 2d 175 (Fla. 1st DCA 1978), *aff'd*, 372 So. 2d 419 (Fla. 1979))).

In sum, the logical relationship test is not met here. Plaintiff's claims are not based upon the same aggregate of operative facts as the foreclosure action. Nor did the filing of the foreclosure action activate additional legal rights that Plaintiff would not otherwise have. Additionally, the chronology demonstrates that the claims Plaintiff asserts in the instant action had not yet accrued when he filed his Answer to the original Complaint in the foreclosure action. Therefore, to the extent Defendant's Motion seeks dismissal of Plaintiff's claims based on Florida's compulsory counterclaim rule, the Motion will be denied.

## C.     Judicial Estoppel

Defendant argues that Plaintiff's claims should be dismissed because during Plaintiff's bankruptcy proceedings, Plaintiff represented to the bankruptcy court that he did not have any contingent claims for damages. Defendant's argument is unavailing. Plaintiff filed his bankruptcy petition on April 17, 2013, and Plaintiff's bankruptcy was discharged on August 1, 2013. Again, the chronology clearly indicates that Plaintiff's claim as alleged in Count I, concerning Plaintiff's fifth and sixth loan modification applications—submitted February 24, 2015, and September 14, 2015, respectively—had not arisen at the time Plaintiff filed his bankruptcy petition and when he indicated that he had no contingent claims. Therefore, Plaintiff could not have disclosed these claims to the bankruptcy court, and judicial estoppel does not apply.

Furthermore, although some of the allegations in Count V arise from events that occurred before Plaintiff filed his bankruptcy petition, there is nothing to indicate that Plaintiff was aware that he had these particular claims against Defendant when he submitted his bankruptcy petition.[3] *Cf. Ardese v. DCT, Inc.*, 280 F. App'x 691, 696 (10th Cir. 2008) (holding that judicial estoppel applied to bar the plaintiff's claims where the plaintiff had filed numerous administrative complaints against the defendant for damages and received right-to-sue letters prior to the

---

[3] Notably, Plaintiff initially filed this suit *pro se* and did not assert the particular claims set forth in Counts I and V of the SAC until he was represented by counsel.

bankruptcy proceeding, making it clear that "[the plaintiff] knew before she filed for bankruptcy that she had a claim against [the defendant]"). Additionally, Defendant has failed to demonstrate that Plaintiff deliberately asserted inconsistent positions to benefit himself. *See Ward v. AMS Servicing, LLC*, 606 F. App'x 506, 510 (11th Cir. 2015) ("[J]udicial estoppel is meant to prevent litigants from deliberately changing positions after the fact to gain an unfair advantage."). Defendant's argument is also devoid of any discussion of the relevant factors that guide a court in deciding whether the doctrine of judicial estoppel should apply in a particular case. *See id.* at 509 (discussing the factors articulated by the Supreme Court and the Eleventh Circuit).

Finally, the two cases Defendant cites to support its argument for the application of judicial estoppel are distinguishable. *See Ward*, 606 F. App'x at 509–10 (holding that judicial estoppel applied to bar the plaintiff's claim where she had previously entered into a consent decree in the bankruptcy court, agreeing that her monthly mortgage payment was $1,319.50 per month and then subsequently brought suit in the district court, arguing that her monthly mortgage payment was only $1,182.89); *Ardese v. DCT, Inc.*, 280 F. App'x 691, 696 (10th Cir. 2008) (emphasizing that the evidence demonstrated that prior to and during the plaintiff's bankruptcy proceeding, she was clearly aware that she had claims against the defendant yet failed to disclose those claims to the bankruptcy court). The facts of the cases Defendant relies upon are markedly different from the facts in the instant case, where—based on Plaintiff's allegations—it appears that Plaintiff did not disclose his claims against Defendant in his bankruptcy action because at the time Plaintiff's bankruptcy action was pending (1) Plaintiff's claims had not arisen; or (2) Plaintiff was unaware that he had claims to assert against Defendant.

The Supreme Court has recognized that judicial estoppel's "purpose is to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50

(2001) (quotation omitted). This purpose would not be served by applying judicial estoppel here. Defendant's request to dismiss Plaintiff's claims based on judicial estoppel will be denied.

### D.    Failure to State a Claim

Defendant argues that Counts I and V fail to state a claim. The Court will address each Count separately.

#### 1.    Count I

First, Defendant argues that Count I fails to state a claim because Plaintiff is "barred from seeking relief under Regulation X in connection with any of his first four loss mitigation applications." (Doc. 50 at 14). As previously discussed, Plaintiff has conceded that Count I only applies to his fifth and sixth loan modification applications, mooting Defendant's first argument. Defendant's second argument is that Count I fails to state a claim because it asserts violations of 12 C.F.R. § 1024.41[4] and that the requirements stated therein are only triggered upon the submission of a complete loss mitigation application. Defendant maintains that neither the fifth nor the sixth application submitted by Plaintiff were complete, and therefore Defendant was not obligated to comply with the requirements set forth in the regulations cited by Plaintiff.

Count I alleges various regulatory violations. For example, Plaintiff alleges that Defendant illegally failed to "timely notify [him] in writing of any incomplete application" and that Defendant illegally "fail[ed] to specify in one writing the information or documents [Plaintiff was required]

---

[4] Regulation X, including part 1024.41 was recently amended, with the amendment becoming effective October 19, 2017. *See* Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 81 Fed. Reg. 72,160 (Oct. 19, 2016); *see also id.* at 72,160–291 (discussing the amendments generally); *id.* at 72,373–375 (outlining the specific amendments and providing the amended language of part 1024.41). Because Plaintiff filed his claims and the parties submitted their arguments regarding the Motion to Dismiss before the amendments to part 1024.41 took effect, this Court has analyzed Plaintiff's claims under the pre-amendment version of the regulation. *See* 12 C.F.R. § 1024.41 (2017).

to provide to [Defendant] to complete the application." (Doc. 41 ¶ 66c.–d.).[5] Title 12, part 1024.41(b)(2)(i)(B) of the Code of Federal Regulations provides:

> If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, [the] servicer shall . . . [n]otify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete *or incomplete. If a loss mitigation application is incomplete*, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete . . . .

(emphasis added). Thus, the plain language indicates that certain regulatory requirements apply even when an incomplete application is received. Accordingly, Defendant's argument is insufficient to warrant dismissal of Plaintiff's claims as alleged in Count I, paragraphs 66c. and 66d. of the SAC.

Plaintiff also alleges violations of 12 C.F.R. § 10241.41(c)(1). Specifically, Plaintiff alleges that Defendant failed to evaluate Plaintiff's fifth and sixth applications for all loss mitigation options available to him within thirty days prior to the foreclosure sale, (Doc. 41 ¶ 66a.–b.), and that Defendant failed to provide him with a written notice of Defendant's "determination of which loss mitigation options, if any[,] were available to [Plaintiff]," (*Id.* ¶ 66e.). Part 1024.41(c)(1) states:

> *If a servicer receives a complete loss mitigation application* more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall: (i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program . . . and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

---

[5] Plaintiff alleges that this is a violation of 12 C.F.R. § 1024.41(c), but this appears to be a typographical error. The relevant part appears to be 1024.41(b)(2)(i)(B).

(emphasis added). Therefore, unlike the previous part discussed, 12 C.F.R. § 1024.41(c)(1) is only applicable where a mortgage servicer receives a complete application. Accordingly, the Court must determine whether Plaintiff has sufficiently alleged that his fifth and sixth applications were submitted in complete form.

The relevant language provides that "complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1). As to Plaintiff's fifth application, Plaintiff alleges that he submitted a "facially complete" application but that Defendant subsequently informed him that his application was incomplete. (Doc. 41 ¶ 45). That same day, Defendant canceled the review of Plaintiff's fifth application. (*Id.*). Thus, the facts—as alleged by Plaintiff—demonstrate that Plaintiff's fifth application did not constitute a complete loss mitigation application. Therefore, to the extent Count I alleges a violation of 12 C.F.R. § 1024.41(c)(1)(i) and 12 C.F.R. § 1024.41(c)(1)(ii) in relation to Plaintiff's fifth application, (*see id.* ¶ 66a., e.), it will be dismissed.

As for Plaintiff's sixth application, Plaintiff again alleges that he submitted a facially complete application but that Defendant subsequently informed Plaintiff that his application was incomplete. (*Id.* ¶ 57). Plaintiff purportedly submitted documents to supplement his sixth application, the receipt of which was acknowledged by Defendant. (*Id.*). Thereafter, Plaintiff alleges that Defendant, acting as U.S. Bank, advised the state court presiding over the foreclosure action that the parties were exploring loss mitigation options and moved the trial court to continue the upcoming foreclosure trial. (*Id.*). The facts, construed in the light most favorable to Plaintiff, lead this Court to plausibly infer that Plaintiff's sixth application, after it was supplemented,

constituted a complete loss mitigation application pursuant to 12 C.F.R. § 1024.41(b)(1).[6] Defendant never informed Plaintiff otherwise after it received Plaintiff's supplemental materials. This is particularly relevant because pursuant to 12 C.F.R. § 1024.41(b)(1), a servicer is obligated to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." Consequently, the Court rejects Defendant's argument that the requirements under 12 C.F.R. § 1024.41(c)(1) were not triggered in relation to Plaintiff's sixth application. Plaintiff has sufficiently stated a claim under 12 C.F.R. § 1024.41(c)(1)(i) in connection with Plaintiff's sixth application, (*see* Doc. 41 ¶ 66b.). And because Plaintiff alleges that after submitting his sixth application, he never received a decision notice, notice of right to appeal, notice of adverse action, or other opportunity to cure any alleged defects, (*id.* ¶ 58), the Court concludes that Plaintiff has sufficiently stated a claim for a violation of 12 C.F.R. § 1024.41(c)(1)(ii) in paragraph 66e. of the SAC.

Plaintiff also alleges a violation of 12 C.F.R. § 1024.41(e)(1) based on Defendant's failure to provide written notice of which loss mitigation options were available to Plaintiff and failing to notify Plaintiff of his right to reject, accept, or appeal any offer. But 12 C.F.R. § 1024.41(e)(1) provides that after a complete loss mitigation application is received, a servicer "*may* require" a borrower to "accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower . . . [or] no earlier than 7 days after the servicer provides the offer of a loss mitigation option to the borrower," depending on when the borrower's application was received. 12 C.F.R. § 1024.41(e)(1) (emphasis added). Plaintiff has failed to sufficiently state a violation of 12 C.F.R. § 1024.41(e)(1). To the extent

---

[6] Defendant urges this Court to rely upon various exhibits submitted with Plaintiff's Complaint to conclude that Plaintiff's sixth application was incomplete. However, the exhibits cited by Defendant do not affirmatively indicate whether Plaintiff's sixth application, after being supplemented, was complete or incomplete.

Plaintiff alleges a violation of 12 C.F.R. § 1024.41(e)(1) in paragraph 66e. of the SAC, that claim will be dismissed.

Next, Plaintiff asserts that Defendant failed to "effectively stop the foreclosure sale while the parties were actively engaged in loss mitigation negotiations, in violation of 12 C.F.R. § 1024.41(d)." (Doc. 41 ¶ 66f.). However, 12 C.F.R. § 1024.41(d) requires a mortgage servicer to notify an applicant whose complete application has been denied of the specific reason or reasons for the servicer's decision. 12 C.F.R. § 1024.41(d). Plaintiff has failed to explain how Defendant's alleged failure to effectively stop the foreclosure sale violates 12 C.F.R. § 1024.41(d), and that claim will be dismissed.

Finally, Plaintiff alleges that Defendant violated 12 C.F.R. § 1024.41(g) by "failing to effectively stop the foreclosure sale without giving [Plaintiff] a compliant denial notice containing a notice of his right to appeal the loan modification denial(s)." (Doc. 41 ¶ 66g.). Part 1024.41(g)(1) provides:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied[.]

Again, Defendant's only ground for dismissing this claim is that Plaintiff failed to submit a complete loss mitigation application. Because the Court has concluded that Plaintiff has sufficiently alleged that his sixth application was complete, Defendant's request to dismiss this claim will be denied. Plaintiff's claim alleging a violation of 12 C.F.R. § 1024.41(g) will survive insofar as it relates to Plaintiff's sixth application.

2.     *Count V*

In Count V, Plaintiff brings a negligent mortgage servicing claim that is premised on alleged violations of two consent judgments. Some background is necessary to understand Plaintiff's claim. On March 12, 2012, the United States, the District of Columbia, and forty-nine states filed suit against Defendant and other major mortgage servicers. *United States v. Bank of Am.*, 78 F. Supp. 3d 520, 523 (D.D.C. 2015).[7] On April 4, 2012, Defendant entered into a consent judgment and thereby agreed to a national settlement, commonly referred to as the National Mortgage Settlement. (Doc. 41 ¶ 22).[8] The terms of the National Mortgage Settlement require Defendant and other mortgage servicers to comply with certain "federally mandated procedures in order to protect homeowners who defaulted on their mortgages from improper foreclosure." *Harvin v. Nationwide Title Clearing*, 632 F. App'x 599, 601 n.1 (11th Cir. 2016) (citing *United States v. Bank of Am.*, No. 1:12-cv-00361, slip. op. at 1–2 (D.D.C. Feb. 12, 2013)); (*see also* Doc. 41 ¶ 22 nn.9–10 (listing some of the requirements of the National Mortgage Settlement and providing a link to Defendant's April 4, 2012 Consent Judgment, to which the terms of the National Mortgage Settlement are attached)).

Similarly, on February 26, 2014, a separate consent judgment was entered in another case, which obligated Ocwen to comply with certain loan servicing requirements. (Doc. 41 ¶ 46). Plaintiff alleges that the Ocwen Consent Judgment terms are "substantially similar" to the terms of the National Mortgage Settlement and that Defendant is bound by the terms of the OCJ because it was the subservicer for Ocwen for Plaintiff's mortgage. (*Id.*). Plaintiff further alleges that borrowers, such as Plaintiff, are third-party beneficiaries of the National Mortgage Settlement and

---

[7] This Court has relied upon other courts to summarize the background facts surrounding the April 4, 2012 Consent Judgment and the National Mortgage Settlement. The Court takes judicial notice of these facts. Furthermore, the factual background stated herein is consistent with the facts as alleged by Plaintiff.

[8] In fact, all parties to the litigation agreed to the National Mortgage Settlement, and a total of five consent judgments were entered in the case on April 4, 2012. *Bank of Am.*, 78 F. Supp. 3d at 524.

the OCJ and "retain the right to pursue statutory and common law claims against the signatory servicers for violations" thereof. (*Id.*). Accordingly, Plaintiff's negligent mortgage servicing claim is based on Defendant's alleged violations of the National Mortgage Settlement and the OCJ.

Defendant argues that Plaintiff's claim must be dismissed because it is premised on alleged violations of the National Mortgage Settlement and the OCJ, to which plaintiff is not a party. In response to Plaintiff's contention that he is a third-party beneficiary to the National Mortgage Settlement and the OCJ, Defendant argues that Plaintiff is only an incidental beneficiary and is therefore unable to enforce the terms of the National Mortgage Settlement or the OCJ. This Court agrees with Defendant. Members of the public are not third-party beneficiaries of the National Mortgage Settlement because "members of the public are merely 'incidental' beneficiaries to government contracts intended to benefit the public, and have no right to sue to enforce the government's contract without clear intent to the contrary." *Harvin*, 632 F. App'x at 601 n.1 (11th Cir. 2016); *see also Rentz v. J.P. Morgan Chase Bank, N.A.*, No. 5:16-cv-1645-CLS, 2017 WL 1354872, at *5 (N.D. Ala. Apr. 13, 2017) (dismissing claims alleging violations of another April 4, 2012 Consent Judgment entered in the same matter because there was "no indication that [the] plaintiff [was] a party to the consent judgment, or that he [had] standing to enforce its terms").

According to Plaintiff, the OCJ—like the April 4, 2012 Consent Judgment—involved a settlement agreement between the plaintiffs—the Consumer Financial Protection Bureau, the District of Columbia, and forty-nine states—and the defendant—Ocwen. (*See* Doc. 41 ¶ 46 & n.14 (citing the Ocwen Consent Judgment)). Plaintiff also states that "[t]he OCJ is modeled after and nearly identical to the [National Mortgage Settlement]." (Doc. 55 at 18). Therefore, the Court finds that for the same reason Plaintiff is unable to state a claim for negligent mortgage servicing based on alleged violations of the National Mortgage Settlement, Plaintiff is also unable to state a claim for negligent mortgage servicing based on alleged violations of the OCJ. The Court will dismiss Count V.

### IV.   CONCLUSIONS

For the foregoing reasons it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 50) is **GRANTED in part** and **DENIED in part.**

2. Counts II, III, IV, and V of the Second Amended Complaint are **DISMISSED**.

3. To the extent that Count I alleges violations of 12 C.F.R. § 1024.41(c)(1)(i) and 12 C.F.R. § 1024.41(c)(1)(ii) in relation to Plaintiff's fifth application; 12 C.F.R. § 1024.41(e)(1); 12 C.F.R. § 1024.41(d); and 12 C.F.R. § 1024.41(g) in relation to Plaintiff's fifth application, it is **DISMISSED**.

4. Defendant's Motion to Dismiss is **DENIED** in all other respects.

**DONE** and **ORDERED** in Orlando, Florida on November 14, 2017.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record